**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
------------------------------x
                              :
ALKA JAUHARI                  :     Civ. No. 3:16CV00680(AWT)
                              :
v.                            :
                              :
SACRED HEART UNIVERSITY, INC. :     March 2, 2017
                              :
------------------------------x
```

<u>**RULING ON MOTION FOR PROTECTIVE ORDER [Doc. #54]**</u>

Pending before the Court is a motion by defendant Sacred Heart University, Inc. ("defendant") for a protective order. [Doc. #54]. Plaintiff Alka Jauhari ("plaintiff") has submitted a response in opposition. [Doc. #58]. For the reasons set forth below, the Court **GRANTS, in part,** defendant's Motion for a Protective Order.

**I.   BACKGROUND**

Plaintiff commenced this action on May 3, 2016, alleging employment discrimination. [Doc. #1]. In her Amended Complaint, plaintiff alleges that she was denied tenure and a promotion on the basis of her race, national origin, and/or gender, in violation of Title VII of the Civil Rights Act of 1964; the Connecticut Fair Employment Practices Act; and the common law of the State of Connecticut. <u>See generally</u> Doc. #28.

On October 26, 2016, plaintiff served her First Set of Interrogatories and Requests for Production; on December 7, 2016, she served her Second Set of Interrogatories and Requests for

Production. See Doc. #55-3 at 23; Doc. #55-4 at 10. The discovery requests seek, inter alia, information and documents concerning other employees of defendant. After the parties alluded to discovery issues in a Joint Status Report and subsequently apprised the Court of a specific discovery dispute, the undersigned held a telephonic conference on February 8, 2017. [Docs. ##52, 53]. During the conference, the parties indicated that they preferred to have the discovery dispute resolved prior to conducting a deposition of defendant's witness. See Doc. #52. Accordingly, the Court advised the parties to meet and confer, and the Court set a briefing schedule for any discovery motion related to the issues at hand. See Doc. #52. On February 17, 2017, defendant filed the instant Motion for a Protective Order, Memorandum in Support, and Proposed Order. [Docs. ##54, 55, 56]. On February 27, 2017, plaintiff filed a Memorandum in Opposition.[1] [Doc. #58]. The motion is now ripe for the Court's review.

## II. LEGAL STANDARD

Rule 26(b)(1) of the Federal Rules of Civil Procedure sets

---

[1] Plaintiff's Opposition also seeks to compel responses to certain interrogatories and requests for production. See Doc. #58 at 1-2; 16. The Court declines to construe plaintiff's opposition as a Motion to Compel, as it was not filed as a motion, defendant has had no opportunity to respond, and it is untimely. See Doc. #52 ("If the parties are unable to reach a resolution, any motion related to these issues shall be filed on or before February 17, 2017. Responses, if any, shall be filed on or before February 27, 2017." (emphasis added)).

forth the scope and limitations of permissible discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). "The party resisting discovery bears the burden of showing why discovery should be denied." Cole v. Towers Perrin Forster & Crosby, 256 F.R.D. 79, 80 (D. Conn. 2009).

A protective order may be issued by the Court pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, which provides, in relevant part: "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including ... forbidding the disclosure or discovery[.]" Fed. R. Civ. P. 26(c)(1)(A). "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984). Further, "[w]here the discovery is relevant, the burden is upon the party seeking non-

disclosure or a protective order to show good cause." <u>Dove v.</u>
<u>Atl. Capital Corp.</u>, 963 F.2d 15, 19 (2d Cir. 1992).

## III. DISCUSSION

Defendant requests that plaintiff be precluded from
discovery regarding: (1) the qualifications of other employees
("comparator discovery"); (2) other complaints of discrimination
against defendant; and (3) complaints made by female students
regarding inappropriate behavior of a professor in the Political
Science department. <u>See</u> Doc. #55 at 1-3. Defendant contends that,
<u>inter alia</u>, the information sought is not relevant. <u>See generally</u>
Doc. #55. Plaintiff objects, and argues that the discovery sought
is relevant to her claims, and therefore discoverable. <u>See</u>
<u>generally</u> Doc. #58.

To establish discriminatory treatment pursuant to Title VII,
plaintiff must show that she was "treated less favorably than
others solely because of [her] race, color, religion, sex or
national origin." <u>Zahorik v. Cornell Univ.</u>, 729 F.2d 85, 91 (2d
Cir. 1984); <u>see also</u> 42 U.S.C. §§2000e, <u>et seq</u>. Plaintiff must
first prove a <u>prima facie</u> case by showing that "(1) [s]he is a
member of a protected class; (2) [s]he was qualified to be a
tenured professor; (3) [s]he suffered an adverse employment
action in the denial of tenure; and (4) the circumstances give
rise to an inference of discrimination." <u>Tori v. Marist Coll.</u>,
344 F. App'x 697, 699 (2d Cir. 2009); <u>see also</u> <u>Zahorik</u>, 729 F.2d

at 92. "[A] prima facie case that a member of a protected class is qualified for tenure is made out by a showing that some significant portion of the departmental faculty, referrants or other scholars in the particular field hold a favorable view on the question." Zahorik, 729 F.2d at 93-94. "[I]f the plaintiff has established a prima facie case, the burden of producing evidence shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Id. at 92 (quotation marks and citation omitted). If defendant meets its burden, "the plaintiff may offer evidence that the defendant's ostensibly legitimate reasons were not genuinely held but were merely a pretext for discrimination." Id.

### A.   Comparator Discovery

Defendant seeks to preclude plaintiff's requests for discovery regarding (1) tenure applicants in other departments of the university, and (2) other tenure applicants within plaintiff's department. See Doc. #55 at 6. Defendant argues that plaintiff's discovery requests seek information that is not relevant to the instant action, and that it would be unduly burdensome to collect and produce said comparator information. See id. at 6-8. Specifically, defendant argues that university-wide discovery would not result in comparable information, as candidates for tenure in different academic departments are not similarly situated to plaintiff, who is a faculty member in the

Department of Government, Politics, and Global Studies. See id. at 5-6. Defendant also contends that there are no relevant comparators in plaintiff's academic department, because the make-up of the selection committee was not the same for the only other tenure candidate within the department during the relevant time period. See id. at 7. Finally, defendant argues that plaintiff's requests implicate privacy and confidentiality concerns. See id. at 5.

In opposition, plaintiff makes several arguments to support the contention that the discovery she seeks is relevant. See generally Doc. #58. Plaintiff claims that the named comparators she has selected are similarly situated to her, as they were held to the same university-wide standards for tenure and promotion as she. See Doc. #58 at 6. She further argues that an inference of discrimination can be established from "procedural defects in the tenure process" and that information regarding defendant's application of their procedures –- purportedly available in the comparators' records -- would therefore be relevant. Id. at 7. Plaintiff also seeks to use the comparator discovery to prove that defendant's rationale for denying her tenure was pretextual. See id. at 7-8.

"A plaintiff relying on disparate treatment evidence must show she was similarly situated in all material respects to the individuals with whom she seeks to compare herself." Mandell v.

Cty. of Suffolk, 316 F.3d 368, 379 (2d Cir. 2003). In order to be an appropriate comparator, "the other individual must have a situation sufficiently similar to plaintiff's to support at least a minimal inference that the difference of treatment may be attributable to discrimination." Bagley v. Yale Univ., No. 3:13CV01890(CSH), 2015 WL 8750901, at *2 (D. Conn. Dec. 14, 2015); see also Berube v. Great Atl. & Pac. Tea Co., 348 F. App'x 684, 686 (2d Cir. 2009) ("Employees used as comparators in such an analysis need not be identically situated, but only must be similarly situated in all material respects.").

### 1.   Comparators Outside Plaintiff's Department

Plaintiff has propounded interrogatories and requests for production seeking discovery regarding employees outside her department, as to which defendant seeks a protective order. Plaintiff's requests seek both general university-wide comparator information, and information as to three named employees. The requests at issue are Plaintiff's First Set of Interrogatories 6, 16 and 17; Plaintiff's Second Set of Interrogatories 1; and Plaintiff's First Requests for Production 18, 22-26, 28-35, 38-44.

Of these requests, three interrogatories and one request for production seek general, university-wide discovery. Interrogatory 16 requests the identification of all tenured and tenure-track professors who have published in particular journals from 2009

through 2015. See Doc. #55-3 at 15. Interrogatory 1 of Plaintiff's Second Set of Interrogatories requests the name of the article and journal(s) for each individual identified in Interrogatory 16. See Doc. #55-4 at 8. Interrogatory 17 requests that defendant identify and provide information regarding every individual who applied for tenure and promotion in 2014-2015. See Doc. #55-3 at 15-16. Finally, Request for Production 18 seeks production of "all minutes, notes, and recordings from [the] Committee for Rank and Tenure meetings during the 2014-2015 school year." Id. at 19.

Defendant seeks to preclude any disclosure of information regarding individuals in different academic departments of the university. Generally, case law holds that such individuals are not appropriate comparators as they are not similarly situated. See Zahorik, 729 F.2d at 93 ("A denial of tenure by an English department simply cannot be compared with a grant of tenure in the physics or history departments."); see also Rajaravivarma v. Bd. of Trustees for Connecticut State Univ. Sys., 862 F. Supp. 2d 127, 162 (D. Conn. 2012) ("[A]ny comparison to tenure candidates in other departments ... would not be meaningful."); cf. Bagley, 2015 WL 8750901, at *9 (limiting the scope of discovery of comparators to those in the same department as plaintiff, with the same title as plaintiff, at the same time as plaintiff, who, like plaintiff, applied for reappointment during that time);

Weinstock v. Columbia Univ., No. 95CV0569(JFK)(RLE), 1995 WL
567399, at *6 (S.D.N.Y. Sept. 26, 1995), aff'd, No.
95CV0569(JFK), 1996 WL 658437 (S.D.N.Y. Nov. 13, 1996) ("Files of
other faculty members from the same academic area who were
promoted or granted tenure may reveal that other candidates were
held to a standard of scholarship lower than that required of the
plaintiff or were reappointed or tenured on the basis of
publication records which were non-existent or less extensive
than that of the plaintiff." (emphasis added)).

Plaintiff argues that defendant based its denial of her
tenure application on the quality and reputation of the journals
in which she had published articles. See Doc. #58 at 3-4. Other
applicants for tenure were subject to the same scholarship
standards, plaintiff claims, but were granted tenure despite
publishing in similarly "dubious" journals. Id. at 11. Plaintiff
therefore argues that the tenure applications, publication
information and evaluations of faculty members outside her
department are relevant, and may provide evidence of disparate
treatment based on a non-uniform application of university-wide
standards. Thus, to prove that "defendant's standards were not
applied uniformly[,]" Doc. #58 at 11, plaintiff believes that she
should not be limited to comparator discovery of individuals
within her department.

The Court agrees with plaintiff that in this case, some measure of non-departmental comparative discovery is appropriate. At Sacred Heart University, plaintiff contends, tenure decisions are not made by committees within individual departments. Rather, a single "Rank and Tenure Committee" makes tenure decisions for all departments across the University. In this case, plaintiff's Department Chair recommended her for tenure, and it was the Committee that denied her application. The same Committee considered and granted or denied applications from all University departments. Thus, the concerns usually raised regarding non-departmental comparator evidence are reduced in this case.

The Rank and Tenure Committee's decision denying plaintiff's application for tenure and promotion, annexed to plaintiff's opposition papers, indicates that "most members of the committee found Dr. Jauhari's scholarship to be inadequate." Doc. #58-2 at 2. It goes on to state that

> three of [plaintiff's four published] articles are in journals of dubious quality that are not respected in the scholarly community. ... Two of the articles were very short (one only four pages) compared to the norm in her field, with content that summarized the work of others rather than presenting original research. Her work is rarely cited by others. Her scholarship therefore did not "increase recognition of the university as a center of knowledge or culture" in the field of political science or in the community at large (Faculty Handbook, 3.11.1, p.36). The Faculty Handbook makes reference to publication in "recognized learned journals" (3.3.5, p.11) but does not have language specifying what this means. This fact caused one committee member to conclude that Dr. Jauhari's publications and others like it must be deemed adequate. The majority of the committee held

> that information about the poor reputation of the three
> journals in question is easily available on the Internet
> and that therefore it is the applicant's responsibility
> to avoid such publications.

Id. The Court notes that the reasons given for plaintiff's
"inadequate" scholarship determination extend beyond the quality
of the journals in which plaintiff published. Id. The Committee's
decision, however, generally discusses the standards applicable
to the university at large, rather than to a particular
department.

Thus, the Court concludes that defendant has not shown good
cause to completely preclude the comparator discovery that
plaintiff seeks. Discovery regarding other faculty members in the
university who applied for tenure and went through the faculty-
review process the same year as plaintiff may provide relevant
information regarding the application of the university-wide
standards in effect the same year that plaintiff's application
was denied. Accordingly, the Court finds that plaintiff can seek
discovery as to those faculty members who applied for and were
considered for tenure in the 2014-2015 academic year.

In addition to the general requests, plaintiff also seeks
information regarding three specific individuals that she
believes are appropriate comparators: Patrick Morris, Antoinette
Bruciati, and Rupendra Paliwal. Interrogatory 6, and Requests for
Production 22-26, 28-35, and 38-44 seek discovery as to these

individuals, including, <u>inter alia</u>, their tenure files and appointment documents. <u>See</u> Doc. #55-3 at 10, 19-21.

Defendant also seeks to preclude discovery of these three specific comparators, arguing that it would be improper for plaintiff to compare her scholarship across disciplines. Plaintiff contends that Mr. Morris, a faculty member in the Department of Criminal Justice, is an appropriate comparator because he was a candidate for tenure during the same year as plaintiff, subject to the same university-wide standards, applied by the same committee. The Court agrees with plaintiff. Defendant has not articulated good cause for a protective order against disclosure of Mr. Morris' tenure application, evaluations and publication information.

However, the Court does not agree that plaintiff is entitled to discovery regarding the other two named individuals. Plaintiff has not articulated a convincing argument as to the relevance of discovery regarding Antoinette Bruciati or Rupendra Paliwal, and such discovery would like cause "annoyance [or] embarrassment." Fed. R. Civ. P. 26(c)(1). Plaintiff claims that discovery should be permitted as to Ms. Bruciati because she was a member of the Committee on Rank and Tenure, and plaintiff wishes to inquire as to whether she applied the scholarship standard uniformly to other tenure applicants. <u>See</u> Doc. #58 at 12. This argument does not support discovery of Ms. Bruciati's <u>own</u> employment

information, including her own tenure file and reappointment documents. See Doc. #55-3 at 19.

Plaintiff also claims that Mr. Paliwal's tenure file, appointment and reappointment documents are relevant and discoverable, as Mr. Paliwal was granted tenure in 2011, during the time that plaintiff was a tenure-track employee. See Doc. #58 at 12. However, Mr. Paliwal is the Provost and Vice President for Academic Affairs –- an administrator, not an ordinary professor -- and thus is not similarly situated to plaintiff. Therefore, plaintiff is not entitled to discovery regarding Mr. Paliwal.

In sum, the Court finds that plaintiff is entitled to seek discovery regarding applicants for tenure who went through the tenure process in the 2014-2015 academic year. Defendant's motion is granted, in part, to the extent it seeks protection from disclosure of all other university-wide comparator discovery. Plaintiff is precluded from seeking discovery regarding: tenure-track individuals in the university that were not considered for tenure in the 2014-2015 year; individuals who applied for promotion but not tenure in 2014-2015; individuals who published in journals similar to plaintiff's who were not considered for tenure in the 2014-2015 year; and Rupendra Paliwal and Antoinette Bruciati, as these individuals are not similarly situated to plaintiff.

In so finding, the Court notes that defendant has not shown it would be unduly burdensome to respond to plaintiff's requests, as limited above. In fact, defendant has offered no support at all for the idea that compliance would be burdensome, except the assertion that tenure files are returned to applicants. See Doc. #55 at 7. By providing no information to guide the Court, defendant has not met its burden of proving that it should be protected from this narrowed category of discovery because of "undue burden or expense." Fed. R. Civ. P. 26(c)(1). Plaintiff asserts that there were only ten candidates for tenure in the 2014-2015 academic year, including herself. See Doc. #28 at 35. Absent any showing by defendant of undue burden, the protective order will be denied.

### 2. Departmental Comparators

Defendant also seeks protection from discovery of comparator information from both applicants for tenure and tenure-track individuals within the Department of Government, Politics, and Global Studies during the time that plaintiff was working at the University.[2] Plaintiff's First Set of Interrogatories 19, and Requests for Production 26 and 27 appear to be implicated by this portion of defendant's motion. See Doc. #55-3 at 16-17, 19, 20.

---

[2] Plaintiff was hired in 1995 as an adjunct professor, and was appointed to a tenure-track position in 2009. See Doc. #28 at 2. Plaintiff's opposition states that she has agreed to limit all of her discovery requests to the timeframe of 2009 to present. See Doc. #58 at 10.

In seeking protection from this particular discovery, defendant argues that the members of the tenure selection committee have changed from year to year, so tenure determinations of other applicants are not comparable. See Doc. #55 at 7. This argument is not persuasive.

> These changes in the [tenure decision maker] ranks over time are neither surprising nor dispositive of the comparator question. ... In the present case, counsel [for defendant] may, if so advised, call these differences in identity among the ranks of the [decision making committee] to the attention of the jury as an element to be considered on the issue of whether a particular individual is similarly situated to [plaintiff], but contrary to [defendant's] contention, such differences do not establish as a matter of law that the [] identified [comparators] are not similarly situated to [plaintiff].

Bagley, 2015 WL 8750901, at *2-*3 (internal citations omitted)).

Accordingly, defendant's motion is denied as to other applicants for tenure in plaintiff's department. Defendant must disclose information regarding faculty members in the Department of Government, Politics, and Global Studies who applied for and went through the tenure review process at any time from 2009 through 2015. However, the Court finds no justification for discovery related to tenure-track faculty members who were not considered for tenure during this timeframe. Accordingly, defendant's motion is granted to the extent it seeks to protect from discovery as to tenure-track individuals who were not considered for tenure from 2009 through 2015.

### 3.   Privacy Concerns

Defendant also raises a concern regarding the privacy implications of disclosing the comparator information to plaintiff, and cites to section 31-128a of the Connecticut General Statutes. That section defines a personnel file as

> papers, documents and reports, including electronic mail and facsimiles, pertaining to a particular employee that are used or have been used by an employer to determine such employee's eligibility for employment, promotion, additional compensation, transfer, termination, disciplinary or other adverse personnel action including employee evaluations or reports relating to such employee's character, credit and work habits. "Personnel file" does not mean stock option or management bonus plan records, medical records, letters of reference or recommendations from third parties including former employers, materials that are used by the employer to plan for future operations, information contained in separately maintained security files, test information, the disclosure of which would invalidate the test, or documents which are being developed or prepared for use in civil, criminal or grievance procedures.

Conn. Gen. Stat. §31-128a. Said information can be disclosed without written authorization of the employee "pursuant to a lawfully issued administrative summons or judicial order[.]" Conn. Gen. Stat. §31-128f. See also Metcalf v. Yale Univ., No. 15CV1696(VAB), 2017 WL 627423, at *5 (D. Conn. Feb. 15, 2017) (discussing Conn. Gen. Stat. §31-128f, and finding that "courts may order the disclosure of employee documents that are relevant to a particular case as part of discovery"). The Court also notes that there is no privilege protecting the disclosure of peer

review materials in tenure decisions. See Univ. of Pennsylvania v. E.E.O.C., 493 U.S. 182, 195 (1990).

With the exception of Patrick Morris, plaintiff seeks only limited information as to the university-wide candidates for tenure in the 2014-2015 year, and seeks only production of the tenure file for any tenure candidates within her department from 2009 through 2015. The Court is confident that the Court's Protective Order, Doc. #4, will protect the information at issue, and the defendant should designate said information as confidential in accordance with that Order. See id. at 1-2. Should the parties wish to fashion any additional safeguards to protect the information at issue, they may propose them for Court review. See Metcalf, 2017 WL 627423, at *5; see also Weinstock, 1995 WL 567399, at *7 ("In order to protect the privacy interests of those faculty members whose files are produced, the parties are directed to enter into a confidentiality agreement which would limit the disclosure of the files to plaintiff's counsel and other persons necessary for trial preparation. The files shall be used by plaintiff only in this action and copies of any files produced shall be retained by plaintiff's counsel.").

### B.  Complaints of Discrimination

Defendant also seeks a protective order against plaintiff's request for university-wide discovery regarding complaints of discrimination on the basis of gender, race, and national origin

since 2009. <u>See</u> Doc. #55 at 2-3. Plaintiff's First Set of Interrogatories 12 and 13, and Requests for Production 36 and 37 are implicated by this portion of defendant's motion. <u>See</u> Doc. #55-3 at 13-14, 20. Defendant asserts that plaintiff's requests are overbroad and seek discovery that is not relevant to this matter. Plaintiff argues that her requests are "properly limited in time and scope[.]" Doc. #58 at 13.

Defendant seeks to limit plaintiff to discovery regarding complaints of discrimination on the basis of gender, race or national origin within plaintiff's department since 2009; and university-wide since 2009, restricted to complaints on said basis concerning the tenure and promotion process. <u>See</u> Doc. #55 at 9.

Plaintiff's Complaint alleges that there was disparate treatment of female tenure applicants at defendant university. <u>See</u> Doc. #28 at 35. "Evidence of general patterns of discrimination by an employer is relevant even in an individual disparate treatment case." <u>Lieberman v. Gant</u>, 630 F.2d 60, 68 (2d Cir. 1980). However, it is unclear to the Court how university-wide complaints of discrimination unrelated to the tenure process would have any bearing on the claims in plaintiff's case, and plaintiff has not rebutted defendant's showing of good cause to limit the university-wide discovery.

Accordingly, defendant's motion is granted, as it pertains to discovery of general complaints of discrimination, university-wide, on the basis of race, national origin and gender against defendant from 2009. Defendant must disclose information only as to any complaints of discrimination on those bases from 2009 through 2015 (1) within the Department of Government, Politics, and Global Studies; and (2) university-wide, regarding the tenure process. See Bagley v. Yale Univ., 315 F.R.D. 131, 147–48 (D. Conn. 2016), as amended (June 15, 2016) (denying unlimited university-wide discovery of prior discrimination complaints); see also Zahorik v. Cornell Univ., 98 F.R.D. 27, 31 (N.D.N.Y. 1983) ("Accordingly, plaintiffs are entitled to discover past instances of sex discrimination against female educators at defendant University and may inquire into the treatment these female educators have been afforded by defendant. They may not, however, conduct a general 'fishing expedition' into areas unrelated to their claims such as the University's treatment of non-academic personnel, administrators, or discrimination claims based on factors other than sex." (footnote omitted)).

### C.  Prior Complaints of Inappropriate Behavior

Plaintiff's Second Set of Interrogatories and Requests for Production seek the discovery of "complaints made by female students regarding inappropriate behavior in all classes taught by [an Associate Professor], including any letter(s) sent to the

Bishop regarding complaints against [that professor]." Doc. #55-4 at 8. Defendant argues that this discovery should be precluded as it is not relevant, and because it would constitute impermissible character evidence, under Rule 404(b) of the Federal Rules of Evidence. <u>See</u> Doc. #55 at 9-10. Plaintiff argues that the "discovery request is relevant to Plaintiff's ability to conduct discovery as to [the professor's] motivations for the sole negative recommendation in her Department for her tenure application." Doc. #58 at 15.

Plaintiff has not proffered <u>any</u> reason why discovery of <u>student</u> complaints of "inappropriate behavior" by a faculty member would have any bearing on that faculty member's motivation to submit a letter that did not recommend plaintiff for promotion and tenure. This is precisely the sort of inquiry that is likely to cause "annoyance [or] embarrassment" and thus is properly subject to a protective order. Fed. R. Civ. P. 26(c)(1). Accordingly, defendant's motion for a protective order is granted, to the extent it pertains to said discovery.

**IV.   CONCLUSION**

Accordingly, for the reasons set forth above, the Court **GRANTS, in part,** defendant's Motion for a Protective Order. Defendant is protected from disclosure of university-wide comparator discovery, with the exception of discovery as to those who applied for and were considered for tenure in the 2014-2015

academic year. Defendant is also protected from discovery regarding individuals in the Department of Government, Politics, and Global Studies who were not candidates for tenure from 2009 through 2015. Defendant is further protected from disclosure of discovery regarding university-wide complaints of discrimination on the basis of race, national origin, and/or gender, from 2009 through 2015, to the extent those complaints do not relate to discrimination during the tenure process. Finally, defendant is protected from disclosure of students' complaints of inappropriate behavior regarding a named faculty member in the Department of Government, Politics, and Global Studies.

This is not a Recommended Ruling. This is an order regarding discovery which is reviewable pursuant to the "clearly erroneous" statutory standard of review. See 28 U.S.C. §636(b)(1)(A); Fed. R. Civ. P. 72(a); and D. Conn. L. Civ. R. 72.2. As such, it is an order of the Court unless reversed or modified by the District Judge upon motion timely made.

SO ORDERED at New Haven, Connecticut, this 2nd day of March, 2017.

_____
/s/

HON. SARAH A. L. MERRIAM
UNITED STATES MAGISTRATE JUDGE